### WOLFF et al. v. E. I. DU PONT DE NEMOURS & CO.

(Circuit Court of Appeals, Third Circuit. January 27, 1905.)

#### No. 5.

PATENTS—INFRINGEMENT—PROCESS OF MAKING SMOKELESS POWDER.

   The Von Freeden patent, No. 429,516, for a process for manufacturing smokeless gunpowder from nitrocellulose, as to claim 1, *held* valid, but not infringed. Claim 2 *held* void for lack of invention.

Appeal from the Circuit Court of the United States for the District of Delaware.

For opinion below, see 122 Fed. 944.

Julian C. Dowell and Osgood H. Dowell, for appellants.
Frederick P. Fish and Charles Neave, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and LANNING, District Judge.

LANNING, District Judge.  By their bill of complaint the appellants seek an injunction to restrain the appellee from an alleged infringement of letters patent No. 429,516, issued June 3, 1890, to Richard Von Freeden, and by him duly assigned to the appellants.  The Circuit Court dismissed the bill, and the cause is now before us on appeal from the decree of that court.

The appellants' patent is for an improvement in the manufacture of smokeless gunpowder from nitrocellulose, a substance commonly known as "gun cotton."  The process referred to in the first claim of the patent, the successive steps in which we have designated by numbers, is set forth in these words:

"I claim as my invention the process of gelatinizing and granulating nitrocellulose, or a compound thereof with other substances, which consist in (1) adding to the said nitrocellulose or compound a solvent of the former, (2) kneading the mass until the same has become plastic and the nitrocellulose thoroughly gelatinized; (3) introducing thereto a liquid or vapor chemically indifferent to the constituents of the mass, and (4) stirring the latter until complete granulation has been produced, substantially as described."

The description of this process in the specification preceding the language of the claim, the successive steps in which we have also designated by numbers, is in the following words:

"The nitrocellulose, or compound thereof with other substances, is (1) first mixed with a liquid adapted to dissolve the former, such as ethyl-ether, methyl-ether, a solution of camphor in ether, a mixture of ether and alcohol, dinitro-toluol, etc.; and the mixture is (2) kneaded or rolled until it has become plastic, and the nitrocellulose completely dissolved.  To the mass thus obtained I (3) introduce a liquid or vapor incapable of dissolving or otherwise acting chemically either on the nitrocellulose, or on the ingredients of the said compound thereof.  Preferably, I employ water or steam, or both together.  At the same time (4) the mass is stirred.  By these means the mass is caused to split up into particles or grains, which become smaller in the measure as the stirring is continued and the temperature is raised."

It will be observed that the steps in the process described in the first claim and the steps in the process described in the specification preceding that claim are the same.

The appellee's process of manufacture is as follows:  (1) The nitrocellulose is put into a churn containing a large quantity of water, where it is beaten or stirred until a thorough mixture has taken place, and the nitrocellulose is uniformly suspended in the water; (2) an emulsion of a solvent, previously prepared in a separate vessel by the mixture of the solvent with water, is poured into the churn, the agitation being meanwhile continued; (3) the globules of the solvent contained in the emulsion are by the agitation distributed through the contents of the churn, and thereby brought into contact with the suspended particles of nitrocellulose; and (4) the globules gelatinize the particles of nitrocellulose with which they come in contact, and thus convert them into a mass of plastic floccules or soft and pulpy grains.

In the opening words of the specification contained in the appellants' patent, Von Freeden, the patentee, declared:

"My invention is based on the discovery made by me that gelatinized nitrocellulose, still containing the solvent employed for its gelatinization, on being exposed to certain liquids or to vapors thereof, undergoes a kind of coagulation and a division into small lumps, which latter is promoted by stirring. This peculiar behavior of the gelatinized nitrocellulose I make use of in the manufacture of granulated gunpowder from nitrocellulose, or compounds thereof with other substances. In view of producing such gunpowder, which is not affected by moisture, the nitrocellulose, whether pure or mixed with other materials, is at present either. converted in its original state into particles, which are thereupon gelatinized on the surface, or it is at the onset thoroughly gelatinized, and subsequently divided by mechanical means into small pieces or laminæ."

This language admits, what the proofs abundantly show, that prior to Von Freeden's discovery granulated gunpowder was made from gelatinized nitrocellulose. Gelatinized nitrocellulose is nitrocellulose that has been partially or wholly dissolved in some solvent thereof. By the first and second steps of the process described in the first claim of the patent, gelatinization only is effected. By the third and fourth steps, granulation only is effected. Furthermore, before the date of Von Freeden's discovery, nitrocellulose, a solvent thereof, and water (that being a liquid that does not dissolve or act chemically upon the nitrocellulose), had been used in the manufacture of granulated gunpowder. The first claim of the patent therefore covers only the process of using these three materials. It will be observed, then, that the problem to be solved is, has the appellee appropriated the substance of the process described in the first claim of the appellants' patent?

A careful examination of the evidence relating to the two processes above set forth discloses to our satisfaction these facts: The appellee adds water to the nitrocellulose before gelatinization; the appellants add it after gelatinization. In the appellee's process there is no kneading or rolling such as is described in the appellants' patent, nor do we find anything which we deem an equivalent thereof. The plastic mass obtained by the appellants is a homogeneous and more or less cohesive mass; that obtained by the appellee is a mass of plastice floccules. In the appellants' process the function of stirring is to break up the plastic mass of gelatinized nitrocellulose into grains; in the appellee's process it is to keep the fibers of the ungelatinized nitrocellulose and the globules of the solvent equally distributed through the water. The appellants first gelatinize and then granulate; the appellee gelatinizes and granulates at the same time. The appellants' gelatinization, which is effected by kneading or rolling the nitrocellulose with its solvent, and their granulation, which is effected by stirring the plastic mass created by the kneading or rolling, consume about 45 minutes; the appellee's gelatinization and granulation are effected in about 5 minutes. The appellants' granulation is secured by stirring the homogeneous, plastic mass, and thereby dividing it "into small lumps," or causing it to be "split up" into particles or grains; the appellee's granulation is effected by bringing the particles of nitrocellulose, as they are suspended in water, into contact with the globules of the solvent. By the appellants' process the product, owing to its thorough gelatinization (and very

probably, also, to a slight compression caused by the kneading and rolling of the mass at the time of gelatinization, though this point is disputed), is hard, impervious to moisture, and possesses a gravimetric density of about 600; by the appellee's process the product is porous, capable of absorbing moisture, and possessing a gravimetric density of not more than two-thirds of that of the appellants' product. Without incumbering this opinion with a detailed examination of the evidence bearing on this branch of the case, we think it sufficient to say that these facts, in our opinion, show that the two processes differ in material respects, and that we agree with the Circuit Court that, as to the first claim of the patent in suit, there is no infringement.

In the opinion of the Circuit Court, the further conclusion was expressed that the language of the appellants' patent insufficiently describes the process referred to in its first claim. The evidence as to whether the patent is in such full, clear, concise, and exact terms as to enable any person skilled in the art of making gunpowder to follow with success the process described in the first claim is conflicting, but we think it preponderates in favor of the validity of the claim. It is not necessary that the description should be clear to one not skilled in the art. This point was aptly illustrated by Mr. Justice Bradley in Loom Co. v. Higgins, 105 U. S., at page 585, 26 L. Ed. 1177, where he said:

"When an astronomer reports that a comet is to be seen with the telescope in the constellation of Auriga, in so many degrees of declination and so many hours and minutes of right ascension, it is all Greek to the unskilled in science, but other astronomers will instantly direct their telescopes to the very point in the heavens where the stranger has made his entrance into our system. They understand the language of their brother scientist."

In the case at bar the appellee's expert Mr. Little sought by his testimony to show that the language of the appellants' patent is obscure. But he is not a practical powder maker. His experiments in powder making have been confined to the laboratory. We are not satisfied that the process adopted by him in his experiment with the appellants' patent, which seems not to have been successful, is one that any person skilled in the art of making gunpowder from nitrocellulose would have adopted. It certainly is very different from the process which the appellants' expert Prof. Munroe says he would adopt. It is also unlike the process which the appellants' agent, Oscar Hesse, declares the appellants, in actual practice, have adopted. The fact is that for nearly 10 years before the bill in this cause was filed the appellants sold in this country a smokeless granulated gunpowder, as a product protected by the letters patent which the appellee now insists are void for obscurity of language. Never until this cause was instituted, so far as we are informed, was the validity of the patent disputed. During all that period of 10 years there seems to have been a public acquiescence in its validity. With these facts before us, we think we are not justified in holding the first claim of the patent to be invalid.

The second claim of the patent is in these words:

"I claim as my invention the process of treating grains composed of gelatinized nitrocellulose, or of a compound thereof with other substances, and still containing the solvent employed for the purpose of gelatinization, the

said process consisting (1) in exposing the grains to a heated liquid or vapor chemically indifferent to the solid constituents thereof, and (2) afterward drying the grains, substantially as described."

In the specification of the patent preceding this claim, this process is thus described:

"The grains are (1) heated together with the same or any other like liquid, vapor, or steam, unadapted to act chemically thereon; the temperature being carried to a degree somewhat above the boiling point of the solvent employed in order to completely drive out the latter. The said solvents are thereby extracted from the grains and evaporated, but they may be recovered by distillation. Thereupon the grains are (2) separated from the liquid or withdrawn from the steam or vapor and dried."

We are forced to the conclusion that the patent, as to this claim, sets forth no patentable invention or discovery. The drying of the grains was necessary, and an old practice. Expelling the solvent from a substance by heating it in water had been practiced in other arts before the date of the appellants' patent. In 1882 a patent was issued to Henry A. Clark for a process of expelling oils and spirits from india rubber, which consisted in subjecting the india rubber to heat in water until the oils or spirits were removed. The expulsion of the solvent from nitrocellulose grains was commonly known to be necessary in order to secure uniformity in the chemical constitution and explosive power of the grains, and it was commonly effected by evaporation or by the use of water or steam, or both. Neither do we find that Von Freeden anywhere in the appellants' patent claimed to have been the discoverer of the process described in the second claim. The thing which he really invented was a new method of granulating gelatinized nitrocellulose, and that invention, he declares, was based on his discovery of the "peculiar behavior" of gelatinized nitrocellulose when, still containing its solvent, it is exposed to certain liquids and stirred. That discovery, and the invention based thereon, are embodied in the first claim. We therefore concur with the Circuit Court in holding the second claim to be invalid.

The result reached is that the decree of the Circuit Court should be affirmed, with costs.